UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL J. ROGERS, | ) |
| Petitioner, | ) CASE NO.   C03-650JCC-MJB |
| | ) (CR01-446JCC) |
| v. | ) |
| UNITED STATES OF AMERICA, | ) REPORT & RECOMMENDATION |
| Respondent | ) |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Michael Rogers is a federal prisoner who is currently incarcerated at the Federal Correctional Institution at Sheridan, Oregon.  He has filed a motion pursuant to 28 U.S.C. § 2255 to challenge the sentence imposed following his guilty plea, in February 2002, to eight counts of bank robbery.  Among the claims raised by petitioner in this action is a claim that he was denied his right to effective assistance of counsel with respect to the exercise of his appellate rights.  On June 7, 2005, this Court held an evidentiary hearing with respect to that claim.  Petitioner was represented by counsel at that hearing.

This Court, having considered the evidence and arguments presented by the parties at the evidentiary hearing, the briefs of counsel, and the balance of the record, recommends that the district court find that petitioner's counsel failed to adequately consult with him regarding the exercise of his appellate rights, but that, in the circumstances of this case, counsel's failure to consult was not

REPORT AND RECOMMENDATION
PAGE - 1

unreasonable. This Court further recommends, on the basis of these findings, that the district court conclude petitioner was not denied effective assistance of counsel with respect to the exercise of his appellate rights. Finally, this Court recommends that petitioner's remaining claim, that he was denied his right to effective assistance of counsel during the course of plea bargaining and sentencing, be denied as well.

## FACTUAL BACKGROUND

Between June 29, 2001, and November 21, 2001, petitioner robbed 17 banks in the Puget Sound area. (*See* Dkt. No. 16 at 3.) Petitioner was arrested on November 27, 2001, and, on November 28, 2001, petitioner was charged by criminal complaint with three counts of bank robbery. (*See* Dkt. No. 16 at 1; CR01-446JCC, Dkt. No. 1.) On December 19, 2001, the grand jury returned an indictment charging petitioner with three counts of bank robbery. (CR01-446JCC, Dkt. No. 7.)

On February 14, 2002, in anticipation of a guilty plea, the United States filed a superseding information charging petitioner with eight counts of bank robbery. (*Id.*, Dkt. No. 10.) On the same date, petitioner entered guilty pleas to each of the eight counts of bank robbery charged in the superseding information. (*Id.*, Dkt. Nos. 13 and 14.) Petitioner, as a part of the plea agreement entered into with the government, agreed to pay restitution in the amount of $46,012. (*Id.*, Dkt. No. 13 at 3.) The restitution amount was not limited to the loss associated with the eight robberies to which petitioner pleaded guilty, but instead reflects the total loss amount associated with all 17 bank robberies petitioner was known to have committed. (Dkt. No. 16 at 3.)

In exchange for petitioner's agreement to plead guilty to the eight counts of bank robbery charged in the superseding information, and to make restitution for all 17 robberies, the government agreed not to seek more than a two-level upward departure from the applicable sentencing guideline range at the time of sentencing. (CR01-446JCC, Dkt. No. 13 at 8.) Petitioner reserved the right to oppose any motion for an upward departure, but agreed not to seek a downward departure. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 2

On April 26, 2002, petitioner appeared before Chief United States District Judge John C. Coughenour for sentencing. (CR01-446JCC, Dkt. No. 19.) At the sentencing hearing, the government asked the court to consider upward departures based on two alternative theories. (*Id.*, Dkt. No. 23 at 7.) First, the government asked the court to consider adjusting petitioner's criminal history category up one level. (*Id.*) The government argued that the criminal history score calculated for petitioner under-represented the seriousness of petitioner's prior history as well as the likelihood of recidivism. (*Id.*) Second, the government asked, in the alternative, that the court adjust petitioner's offense level up two levels to account for two bank robberies which were otherwise not accounted for under the guidelines. (*Id.*, Dkt. No. 23 at 8.)

After hearing counsel's arguments, the Court declined to depart upward with respect to criminal history, but granted the requested departure in offense level.[1] (*Id.*, Dkt. No. 23 at 11.) The Court then imposed a sentence of 84 months confinement, three years of supervised release, and restitution in the amount of $46,012. Petitioner did not file any direct appeal.

## PROCEDURAL HISTORY

On March 12, 2003, petitioner presented to this Court for filing a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 1.) Petitioner asserted two grounds for relief in his motion: (1) that he was sentenced outside the guideline range; and, (2) that he should not have been ordered to pay restitution for nine uncharged bank robberies. (*Id.*) The government filed a response to petitioner's motion in which it argued that petitioner was not entitled to the relief requested and that petitioner's motion should be denied. (Dkt. No. 6.) Petitioner subsequently filed a reply brief in which he suggested that the government had incorrectly construed his claims in its

---

[1] Judge Coughenour acknowledged that an upward departure on either of the theories would have been appropriate, but indicated that he would impose only the two level departure in petitioner's offense level.

REPORT AND RECOMMENDATION
PAGE - 3

1  response to his motion. (Dkt. No. 9.) Petitioner then proceeded to re-state his claims for the Court's
2  benefit.
3         This Court, after reviewing the briefs of the parties, concluded that the government had not
4  misconstrued petitioner's claims as presented in his original motion and that, in fact, petitioner was
5  attempting to amend his motion. Thus, on October 20, 2003, this Court issued an Order advising
6  petitioner that if he wished to amend his motion, he would have to seek leave to amend by filing a
7  motion to amend together with a proposed amended § 2255 motion. (Dkt. No. 12.)
8         On November 4, 2003, petitioner filed a motion for leave to amend his § 2255 motion. (Dkt.
9  No. 14.) Petitioner incorporated his proposed amended § 2255 motion into his motion to amend.
10 Petitioner asserted the following two grounds for relief in his motion to amend: (1) that he was denied
11 effective assistance of counsel during the course of his plea bargaining and sentencing; and, (2) that he
12 was denied the effective assistance of appellate counsel when his counsel failed to file an appeal. (*Id*.)
13 On December 12, 2003, the government filed a response to petitioner's motion for leave to amend in
14 which it addressed the merits of petitioner's claims. (Dkt. No. 15.) The government argued therein
15 that petitioner was not entitled to relief on any of the grounds alleged in his amended motion.
16        After reviewing the briefing of the parties, this Court determined that it would be necessary for
17 the parties to supplement the record in order to resolve inconsistencies in petitioner's assertions
18 regarding his own actions, and his counsel's actions, with respect to the filing of an appeal.
19 Accordingly, on January 23, 2004, this Court issued an order granting petitioner's motion to amend
20 and directing the parties to supplement the record with sworn affidavits detailing any conversations
21 between petitioner and his attorney regarding the filing of an appeal. (Dkt. No. 18.) After receiving
22 the parties' submissions in response to that Order, this Court determined that an evidentiary hearing

REPORT AND RECOMMENDATION
PAGE - 4

1  was necessary in order to resolve petitioner's claim that he was denied the effective assistance of
2  counsel relative to the exercise of his appellate rights. (Dkt. No. 23.)
3       On June 7, 2005, this Court held an evidentiary hearing in this matter. (*See* Dkt. Nos. 43 and
4  45.) Petitioner was represented by appointed counsel at the hearing. Petitioner testified on his own
5  behalf and petitioner's former counsel, Paula Semmes Deutsch, testified on behalf of the government.
6  Following the evidentiary hearing, the parties were permitted to submit their closing arguments in
7  written form. The parties were invited to address in their closing briefs the question of whether
8  several of petitioner's previous submissions, which petitioner admitted at the evidentiary hearing he
9  had neither read nor, in most cases, signed, should be stricken from the record. The parties' closing
10 briefs have been received and this matter is now ripe for review.

## DISCUSSION

### Striking of Documents

13      Preliminarily, the Court must address the question of whether any of petitioner's previous
14 submissions should be stricken from the record based upon his admissions at the evidentiary hearing
15 that he had neither read nor signed a majority of those documents. At issue are petitioner's reply to
16 the government's response to petitioner's original § 2255 motion (Dkt. No. 9) which petitioner signed,
17 but did not read. Also at issue are petitioner's motion for leave to amend (Dkt. No. 14), petitioner's
18 reply to the government's response to his motion for leave to amend (Dkt. No. 17), and petitioner's
19 motion to supplement the record (Dkt. No. 19), none of which were either read or signed by
20 petitioner.[2]
21      In a post-hearing Order setting a schedule for submission of the parties' closing arguments, this
22 Court advised the parties of its intent to strike the documents which petitioner testified he had neither

---

[2] The Court notes that these documents were not submitted to the Court unsigned. Rather, they were submitted with a signature that purported to be petitioner's but that was, in fact, the signature of another inmate.

REPORT AND RECOMMENDATION
PAGE - 5

read nor signed, and invited the parties to address this issue in their briefing.  In his briefing, petitioner argues that the documents should not be stricken because he intends to cure any deficiencies regarding the reading or signing of pleadings, and because there is no basis for the Court to impose the proposed sanction of striking the documents.[3]  The government argues that the documents should be stricken from the record and that the Court should rely only on petitioner's original sworn petition and his sworn testimony at the evidentiary hearing.

While petitioner has now adopted the documents in question as his own, the Court remains troubled by the fact that the representations made to the Court in those documents, representations which significantly altered the scope of this case, were inconsistent with representations made by petitioner in his original motion and were apparently made without petitioner's knowledge.  However, if the Court were to strike the documents, the ineffective assistance of counsel claim which has been the focus of this action for the past two years would not even be before the Court as petitioner's original motion set forth no such claim.  At this juncture this Court deems it most prudent to allow the documents to remain a part of the record.  However, this Court intends to rely on those documents only to the extent that they identify petitioner's grounds for relief.  For purposes of resolving petitioner's claims, the Court will rely exclusively on petitioner's original sworn motion and his sworn testimony at the evidentiary hearing.

### Notification of Appellate Rights

Petitioner asserts that he was denied the effective assistance of counsel when his attorney failed to file a notice of appeal.  In *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), the United States Supreme Court held that the proper standard for evaluating claims that counsel was constitutionally ineffective for failing to file a notice of appeal is the standard set forth in *Strickland v. Washington,* 466 U.S. 668

---

[3] On September 20, 2005, petitioner submitted to the Court a declaration, with the documents in question attached, in which he states that he has read the documents, has adopted the documents in support of his case, and has personally signed all of the documents.  (*See* Dkt. No. 52.)

REPORT AND RECOMMENDATION
PAGE - 6

(1984).[4] *Flores-Ortega* instructs that, when evaluating claims that counsel was constitutionally ineffective for failing to file a notice of appeal, the reviewing court must first consider whether counsel, in fact, consulted with the defendant about an appeal.  The Supreme Court explained that the word "consult," in this context, means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover defendant's wishes." *Id*. at 478.

Petitioner testified at the evidentiary hearing that after he was sentenced he had two interactions with his attorney, Ms. Deutsch, regarding the filing of an appeal.  Petitioner testified that his first interaction with Ms. Deutsch occurred on the day of his sentencing hearing, immediately after he was sentenced. (Dkt. No. 45 at 8.)  Petitioner contends that after being advised by Chief Judge Coughenour of his right to appeal, he turned to Ms. Deutsch and said "File an appeal."  (*Id*.)  According to petitioner, Ms. Deutsch responded "On what grounds?" and he replied "You're the lawyer; you figure it out."  (*Id*.)  Petitioner was thereafter taken away by the U.S. Marshals and was returned later that day to the Federal Detention Center at SeaTac, Washington ("FDC SeaTac"). (*Id*.)

Petitioner testified that he had no further contact with Ms. Deutsch until the Tuesday following his sentencing hearing when he called her from FDC SeaTac.  (*Id*. at 9.)  Petitioner testified that when Ms. Deutsch answered his call, she first rebuked him for talking to her other clients and then stated, with respect to any appeal "that I really didn't have any action because the Government would just cite relevant conduct."  (*Id*. at 9-10.)  According to petitioner, his response to Ms. Deutsch was "Okay, whatever" and then he hung up the phone.  (*Id*. at 10)  Petitioner testified that he made no further attempts to contact Ms. Deutsch.  (*Id*.)

---

[4] Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different.  *Strickland*, 466 U.S. at 688, 691-92

REPORT AND RECOMMENDATION
PAGE - 7

1    Unfortunately, Ms. Deutsch was unable to shed any light on these alleged interactions at the
2 evidentiary hearing.  Ms. Deutsch testified that she had no recollection of petitioner telling her that he
3 wanted her to file an appeal immediately after sentence was imposed.  (Dkt. No. 45 at 39.)  She also
4 testified that she had no recollection of any subsequent conversation with petitioner regarding an
5 appeal.  (*Id*. at 39-40.)  Ms. Deutsch made clear that she was not denying this second conversation
6 occurred, only that she had no recollection of it.  (*Id*. at 40.)  Ms. Deutsch also testified that there was
7 nothing in her notes or in her file of the case reflecting any conversations about an appeal.  (*Id*.)  Ms.
8 Deutsch was essentially only able to offer that she did not believe there were any viable grounds for an
9 appeal, but that she would have, nonetheless, had a notice of appeal filed if petitioner had insisted that
10 she do so.  (*Id*. at 43.)

11    Petitioner's statements in his original § 2255 motion, and his testimony at the evidentiary
12 hearing, support the conclusion that he had some communication with Ms. Deutsch regarding the
13 filing of an appeal.  The record also supports the conclusion that petitioner understood from their
14 purportedly brief conversations that Ms. Deutsch did not believe there were any viable grounds for
15 appeal.  However, nothing in the record satisfies this Court that Ms. Deutsch took the time to advise
16 petitioner of the "advantages and disadvantages of taking an appeal" or made a reasonable effort to
17 discover petitioner's wishes in this regard.  *Flores-Ortega*, 528 U.S. at 478.  The minimal
18 conversations between petitioner and Ms. Deutsch regarding an appeal do not satisfy the definition of
19 "consult" under *Flores-Ortega* .  This Court therefore recommends the district court find that Ms.
20 Deutsch did not "consult" with petition about an appeal as that term is defined in *Flores-Ortega*.  *Id.*

21    While this Court concludes, based on the record before it, that counsel did not adequately
22 consult with petitioner about an appeal, this conclusion does not end this Court's inquiry.  In *Flores-*
23 *Ortega*, the Supreme Court rejected "a bright–line rule that counsel must always consult with the
24 defendant regarding an appeal."  The Court held instead that

REPORT AND RECOMMENDATION
PAGE - 8

> [C]ounsel has a constitutionally imposed duty to consult with the defendant when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Id.* at 480.

This Court is not satisfied that counsel had a duty to consult with petitioner regarding an appeal in the circumstances presented here. While petitioner contends now that he wanted to appeal, the record does not support the conclusion that a rational defendant would have wanted to appeal in this case. First, the Court notes that petitioner received the sentence he bargained for as a part of his plea agreement.[5]

More significant perhaps is that despite the upward departure, the sentence petitioner received was only six months longer than the sentence he would likely have received absent the departure. The applicable guideline range, prior to any departure, was 63 to 78 months. The applicable guideline

---

[5] In fact, the transcript of the sentencing hearing suggests that petitioner may have received a lesser sentence than was contemplated by the parties at the time they negotiated the plea agreement. The Assistant United States Attorney made the following representation to the Court at the time of sentencing in arguing for an upward departure:

> Also, at the time that the defense attorney, Ms. Deutsch, and I were negotiating the plea, we both were under the assumption that Mr. Rogers was going to come out in a criminal history category or four.
>
> So in my negotiations they knew that I was contemplating that if Your Honor granted a two-level upward departure and if Mr. Rogers was in that criminal history – excuse me, criminal history category of four, that the sentencing range would actually be *92 to 115 months*.

(CR01-446JCC, Dkt. No. 23 at 6-7 (emphasis added).)

As noted earlier, petitioner was actually sentenced to 84 months imprisonment, below the range originally contemplated by the parties.

range after the departure was 78 to 97 months.  The United States Probation Office recommended a sentence of 78 months without any upward departure.  Chief Judge Coughenour, after granting the upward departure, imposed a sentence of only 84 months.  While this Court understands that the additional six months is significant to petitioner, it is unlikely that this modest increase in petitioner's sentence, based as it was upon the sentencing court's exercise of its discretion to depart upward in order to account for additional robberies which were otherwise unaccounted for by the guidelines, presented a viable issue for appeal.  Accordingly, this Court cannot conclude that a rational defendant would have wanted to appeal in these circumstances, as any appeal would likely have been unsuccessful.

The next question this Court must consider is whether petitioner reasonably demonstrated to Ms. Deutsch that he wanted to appeal.  It is this Court's view that he did not.  As noted above, petitioner testified at the evidentiary hearing that he communicated with Ms. Deutsch about a possible appeal on two occasions.  He further testified that he understood from those interactions that Ms. Deutsch did not believe there were any good grounds for appeal and that she was not planning to file a notice of appeal.  Petitioner's final interaction with Ms. Deutsch ended with petitioner hanging up on Ms. Deutsch after she apparently expressed again her opinion that there were no grounds for an appeal.  Petitioner made no further effort to contact Ms. Deutsch regarding the filing of an appeal and, in fact, he admitted in his original § 2255 motion that he did not want Ms. Deutsch to handle his appeal. (Dkt. No. 1 at 3.)

Petitioner fails to persuade this Court that he reasonably demonstrated to Ms. Deutsch that he wanted to appeal.[6]  In addition, this Court is satisfied that if petitioner had insisted that Ms. Deutsch

---

[6] This Court also finds it significant that Judge Coughenour, at the time of petitioner's sentencing, provided petitioner with sufficient information to allow him to initiate an appeal without the assistance of Ms. Deutsch, and yet he took no steps to do so.  In fact, between April 30, 2002, the date of petitioner's last interaction with Ms. Deutsch, and almost one year later, March 12, 2003,

REPORT AND RECOMMENDATION
PAGE - 10

1  file a notice of appeal, she would have done so regardless of her belief that there were no viable
2  grounds for an appeal.
3     Because this Court is not satisfied that a rational defendant would have wanted to appeal in the
4  circumstances presented here, or that petitioner sufficiently demonstrated to Ms. Deutsch that he had
5  an interest in an appeal, this Court recommends that the failure of Ms. Deutsch to adequately consult
6  with petitioner regarding the appeal did not constitute deficient conduct.

Plea Bargaining and Sentencing

8   In addition to his claim that he was denied effective assistance of counsel with respect to the
9   exercise of his appellate rights, petitioner also asserts that he was denied effective assistance of counsel
10  during the course of plea bargaining and sentencing. (Dkt. No. 14.) Specifically, petitioner contends
11  that Ms. Deutsch failed to accurately convey the terms of the plea agreement to him, failed to
12  negotiate the plea agreement in good faith, and failed to adequately argue petitioner's contentions in
13  opposition to the government's motion for an upward departure.[7] (*Id*. at 5-7.)
14  As noted above, claims of ineffective assistance of counsel are evaluated under the two-prong
15  test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).  Under *Strickland*, a defendant must
16  prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a
17  reasonable probability exists that, but for counsel's errors, the result of the proceedings would have
18  been different. *Strickland*, 466 U.S. at 688, 691-92.

---

when petitioner filed the instant action, petitioner made no effort to challenge his sentence in any fashion.

[7] The Court notes that petitioner's claim that he was denied effective assistance of counsel during the course of plea bargaining and sentencing was not addressed at the evidentiary hearing or in any subsequent briefing. The Court relies on the statement of this claim in petitioner's amended § 2255 motion, and the government's response to petitioner's amended § 2255 motion, for resolution of this claim.

REPORT AND RECOMMENDATION
PAGE - 11

When considering the first prong of the *Strickland* test, judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to satisfy the "prejudice" requirement in the context of guilty pleas, the petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Strickland*, 466 U.S. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id.*

Petitioner's claim that counsel failed to accurately convey the terms of the plea agreement to him is without merit. On February 14, 2002, petitioner appeared before the Honorable Ricardo S. Martinez, then United States Magistrate Judge, to enter his plea. (CR01-446JCC, Dkt. No. 14.) During the course of that proceeding, Judge Martinez reviewed the plea agreement with petitioner one paragraph at a time to ensure that petitioner understood the charges against him, the rights he was giving up by pleading guilty, the terms and conditions of the plea agreement, and the benefits he was receiving in exchange for his guilty plea. (*Id*., Dkt. No. 22.) At every step, petitioner acknowledged his understanding and agreement with the contents of that document. Petitioner then proceeded to enter a plea in accordance with the agreement.

Petitioner's declarations that he understood and accepted the terms of the plea agreement, which were made in open court at the time petitioner entered his guilty plea carry, a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner offers nothing to

REPORT AND RECOMMENDATION
PAGE - 12

1  rebut this presumption.  Accordingly, petitioner's claim that counsel failed to adequately advise him of
2  the terms of the plea agreement must fail.

3  Petitioner next claims that counsel failed to negotiate the plea agreement in good faith.
4  However, this allegation is conclusory and without any apparent support in the record.  While the
5  record makes clear that the relationship between petitioner and Ms. Deutsch was a difficult one, the
6  record also makes clear Ms. Deutsch negotiated a very favorable agreement for petitioner which
7  required him to plead guilty to only eight of 17 bank robberies, and which limited any upward
8  sentencing departure to two levels.  Petitioner fails to make clear what more he believes counsel
9  should have done on his behalf as it relates to the negotiation of the plea agreement.  Accordingly,
10 petitioner's claim that counsel failed to negotiate the plea agreement in good faith must fail.

11 Finally, petitioner argues that counsel failed to adequately present his argument in opposition
12 to the government's motion for an upward departure.  The government presented its motion for an
13 upward departure in its sentencing memorandum.  (CR01-446JCC, Dkt. No. 17.)  The government
14 argued therein that the case of *United States v. Pearson*, 911 F.2d 186 (9th Cir. 1990), supported its
15 request for an upward departure in petitioner's case.  *Id.*  At petitioner's sentencing hearing, Ms.
16 Deutsch argued against the departure on the grounds that the case relied upon by the government was
17 distinguishable from petitioner's case.  While counsel's argument was not successful, it appears to be
18 the same argument which petitioner now contends should have been made in opposition to the
19 government's motion for upward departure.  Because it appears that petitioner's counsel did, in fact,
20 present the argument that petitioner believes should have been presented, this portion of petitioner's
21 ineffective assistance of counsel claim must fail.

22 Based upon the foregoing, this Court concludes that petitioner was not denied the effective
23 assistance of counsel during the course of plea bargaining and sentencing.  Accordingly, petitioner's
24 amended § 2255 motion should be denied with respect to these claims.

25
REPORT AND RECOMMENDATION
26 PAGE - 13

## CONCLUSION

Based upon the foregoing, this Court recommends that the district court find that petitioner's counsel failed to adequately consult with him about an appeal but that, in the circumstances of this case, counsel's failure to consult was not unreasonable. This Court further recommends that the district court conclude, on the basis of these findings, that petitioner was not denied the right to effective assistance of counsel with respect to the exercise of his appellate rights. Finally, this Court recommends that the district court find that petitioner's remaining ineffective assistance of counsel claim is without merit and conclude that petitioner's § 2255 motion should be denied in its entirety. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of December, 2005.

/s/ M. Benton
MONICA J. BENTON
United States Magistrate Judge